**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES JONES, | ) | |
| | ) | |
| | ) | No. 14-cv-4023 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Hon. Amy J. St. Eve |
| | ) | |
| THE CITY OF CHICAGO, et. al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

Before the Court are Plaintiff Charles Jones's ("Jones") motions in limine as well as the motions in limine of Defendants the City of Chicago (the "City") and Chicago Police Department personnel Stephen Insley, Matthew Malloy, Timothy Moran, Jared Nowak, Gary Olson, and William Hardy (collectively, "Defendants"). The Court has previously granted, based on the parties' agreement, Jones's motions in limine numbers 1, 3, 4, 5, 13, 16, and 24 (for 24(e), the Court granted the motion only to the extent of the parties' agreement), and Defendants' motions in limine numbers 2, 4, 5, 6, 10, 11, 12, and 13. (R. 124.) Additionally, in their response to Jones's motions, Defendants indicate that they do not object to Jones's motion in limine number 11. (R. 133 at 4.) The Court therefore grants that motion as well. With respect to the disputed motions, the Court grants in part and denies in part both parties' motions in limine for the reasons that follow.

# BACKGROUND

On June 1, 2012, Defendant police officers executed a search warrant for Jones and upon the premises of 5645 S. Carpenter, Chicago, IL 60621 (the "Carpenter Street address"). (R. 55, Answer Am. Compl., at ¶ 7.) Defendant Olson had prepared the application for the search warrant based on information he received from a "cooperating individual." (*Id.* at ¶ 8.) On May 31, 2012, the cooperator told Olson that he had gone to the Carpenter Street address the day before to purchase heroin from a "Charles Jones," a man he had bought heroin from on a daily basis for the previous month. (R. 97, Memorandum Op., at 2–3.) The cooperator later positively identified a picture of Jones as the individual who sold him heroin at the Carpenter Street address. (*Id.* at 3.) Olson then sought a search warrant, relaying these facts and appearing before a judge with the cooperator for questioning. (*Id.*) The judge then made a finding of probable cause and issued the warrant. (*Id.* at 3–4.)

When the police executed the warrant, Jones was present. (R. 55 at ¶ 16.) Jones claims that he did not reside at the Carpenter Street address at the time the police executed the warrant. (*Id.* at ¶ 15.) Instead, Jones says that he lived at 1849 W. 79th Street, Chicago, IL 60620. (*Id.* at ¶ 19.) The police recovered ammunition and 31 grams of cannabis. (*Id.* at ¶ 18.)

At least two Defendant officers separated Jones from the other individuals at the Carpenter Street address and questioned him. (*Id.* at ¶ 22.) Jones claims the officers demanded to know information related to other criminal activity or the location of a weapon, or "they would charge [Jones] with the recovered ammunition and cannabis if he did not give the officers information." (*Id.*) Jones did not provide any information, and one or more of the Defendant officers arrested him for unlawful use of a weapon and possession of cannabis. (*Id.* at ¶¶ 24–25.)

Jones alleges that Defendants' arrest report and original case incident reports are "replete with false information." (*Id.* at ¶ 26.)

After arrest, Jones alleges that he remained in custody for two months. (*Id.* at ¶ 27.) On June 25, 2012, a grand jury indicted him on two counts of unlawful use of a weapon. (*Id.* at ¶ 28.) Jones was found not guilty by a directed verdict at his trial. (*Id.* at ¶ 29.)

On April 17, 2015, Jones filed his First Amendment Complaint, alleging five counts: (1) a claim under 42 U.S.C. § 1983 based on a violation of the Warrant Clause of the Fourth Amendment because, prior to obtaining the search warrant that led to Jones's arrest, Defendant Olson failed to establish the reliability of the cooperator and failed to adequately corroborate the individual's information ("Count I"); (2) a claim under § 1983 for "falsely arresting and imprisoning [Jones] . . . under color of law and without probable cause" in violation of the Fourth Amendment ("Count II"); (3) a violation of § 1983 based on a conspiracy to "unlawfully seize [Jones] and continue the unlawful seizure of [Jones] thereby depriving [him] of his rights under the Fourth Amendment" ("Count III"); (4) a claim under Illinois law of malicious prosecution ("Count IV"); and (5) a state-law claim for indemnification under 745 Ill. Comp. Stat. 10/9-102 against the City of Chicago. The Court previously granted Defendants' motion for partial summary judgment as to Count I, (R. 97), and the Court assumes familiarity with that ruling, Jones's allegations, and the proceedings in this case thus far.

## LEGAL STANDARD

### I.     Motions in Limine

Trial courts have broad discretion in ruling on evidentiary issues before and during trial. *See Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 939 (7th Cir. 2016); *Whitfield v. Int'l Truck & Engine Corp.,* 755 F.3d 438, 447 (7th Cir. 2014). "Although the Federal Rules of

Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States,* 469 U.S. 38, 41 n.4 (1984); *see also Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) ("The Federal Rules of Civil Procedure set out many of the specific powers of a federal district court," but "they are not all encompassing," for example, they make no provision "for the power of a judge to hear a motion *in limine*."). "Trial courts issue rulings on motions in limine to guide the parties on what evidence it will admit later in trial," and "[a]s a trial progresses, the presiding judge remains free to alter earlier rulings." *Perry v. City of Chicago,* 733 F.3d 248, 252 (7th Cir. 2013). It is well-established that a motion in limine "is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings" and that it "permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not to be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997).

## II.     Federal Rules of Evidence

Pursuant to Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401; *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012). In short, Rule 401 defines relevance broadly. *See United States v. Boswell,* 772 F.3d 469, 475 (7th Cir. 2014). Rule 402 "provides the corollary that, with certain exceptions, '[r]elevant evidence is admissible' and '[i]rrelevant evidence is not admissible.'" *Boros,* 668 F.3d at 907. The Court, however, may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence." Fed. R. Evid. 403. When considering Rule 403, courts use "a sliding scale approach: as the probative value increases, so does our tolerance of the risk of prejudice." *Whitehead v. Bond,* 680 F.3d 919, 930 (7th Cir. 2012). "Evidence is unduly prejudicial if it creates a genuine risk that the emotions of the jury will be excited to irrational behavior, and the risk is disproportionate to the probative value of the offered evidence." *Morgan v. City of Chicago,* 822 F.3d 317, 339 (7th Cir. 2016) (citation omitted).

## ANALYSIS

## I. Defendants' Motions in Limine

### A. Motion in Limine #1: Barring Generalized Evidence of Police "Code of Silence"

Defendants seek to prevent Jones "from offering any testimony, evidence, or argument that police officers in general lie, conspire, cover-up or otherwise maintain a "code of silence" to protect their fellow officers." (R. 115 at 1.) The Court grants Defendants' motion as to generalized evidence or argument concerning the "code of silence," as such evidence or argument would not be helpful to the jury and the risk of unfair prejudice would substantially outweigh any probative value. Fed. R. Evid. 401, 403; *Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 3205304, at *5 (N.D. Ill. July 28, 2011); *Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 819 (N.D. Ill. 2010). Jones also may not use the terms "code of silence," "blue wall," or other similar terms, as they are unduly prejudicial. *See Ratliff v. City of Chicago*, No. 10 C 739, 2012 WL 5845551, at *4 (N.D. Ill. Nov. 19, 2012). That said, "whether the individual Defendants covered-up for each other is probative of the officers' bias, which is almost always relevant." *Hill*, 2011 WL 3205304, at *5. Thus, the Court denies Defendants' motion to the extent it pertains to their conduct relevant to the claims in this case, namely evidence that officers covered up allegedly wrongful behavior related to the arrest or prosecution or Jones, or

that the officers involved in this case are biased in favor of one another.  *See id.*; *see also Ratliff*, 2012 WL 5845551, at *4; *Christmas*, 691 F. Supp. 2d at 819 ("Accordingly, the motion in limine is granted in part and denied in part as follows: (1) the plaintiffs may not introduce generalized evidence of a 'code of silence' but (2) may introduce evidence that the officers involved in the events underlying the complaint adhered to a 'code of silence' regarding the alleged violation of the plaintiffs' constitutional rights.")

### B. Motion in Limine #3: Testimony or Argument that Any Officer Violated Chicago Police Department Orders, Rules, or Regulations

Defendants seek to bar Jones from introducing any evidence, testimony, or argument that "any officer violated any general orders, special orders, rules and regulations" on relevancy grounds as well as Rule 403.  (R. 115 at 4.)  "It is well-settled that violations of the Chicago Police Department Rules and Regulations cannot establish proof that a defendant violated a plaintiff's constitutional rights."  *Hill*, 2011 WL 3205304, at *3 (citing *Thompson v. City of Chicago*, 472 F.3d 444, 454–55 (7th Cir. 2006)).  Accordingly, any evidence that officers violated Chicago Police Department standards is irrelevant to a § 1983 claim and therefore inadmissible to prove a § 1983 claim.  *See id.*

Jones argues that the violation of Chicago Police Department General Orders, Rules and Regulations is "pertinent to the issue of 'willful and wanton' for the state claims, and for punitive damages."  (R. 125 at 2.)  In *Thompson v. City of Chicago*, 742 F.3d 444, 456–57 (7th Cir. 2006), the Seventh Circuit assumed the relevance of the police department's general orders to the plaintiff's state-law wrongful death claim, but determined that the district court did not abuse its discretion in excluding evidence of the orders under Rule 403.  The court explained that this evidence would be of little relevance and a limiting instruction could not sufficiently cure the "unnecessary and detrimental jury confusion" that would arise from the introduction of any

breach-of-department-protocol evidence. *Thompson*, 742 F.3d at 457; *see also Bruce*, 2011 WL 3471074, at *2 (discussing *Thompson*)).

Drawing upon *Thompson*, courts weighing the admissibility of evidence of a violation of a police department regulation in support of a state-law claim or punitive damages have concluded that the evidence may be relevant, but the proponent of the evidence "carries a heavy burden under [Federal Rule of Evidence] 401 and 403." *Martinez*, 2016 WL 3538823, at *6 (quoting *Gonzalez v. Olson*, No. 11 C 8356, 2015 WL 3671641, at *13 (N.D. Ill. June 12, 2015)); *see also Jones v. Walters*, No. 12-cv-5283, No. 12-cv-5283, 2016 WL 1756908, at *8 (N.D. Ill. Apr. 29, 2016) (explaining that evidence of a violation of a police department rule "may be relevant" for some purposes, including "to prove state law claims" or punitive damages); *Rothwell v. City of Chicago*, No. 10 C 1338, 2011 WL 5169419, at *1 (N.D. Ill. Oct. 31, 2011) (quoting *Hudson v. City of Chicago*, 881 N.E.2d 430, 456–57 (Ill. App. Ct. 2007)).

Jones argues that it is "[p]articularly relevant" that "some of the Defendants removed and did not return items of evidence that they claim they obtained from" the Carpenter Street address. (R. 125 at 2.) Jones says that, in violation of police-department rules, Defendants removed items (specifically, ammunition) from police department custody, failed to obtain a signed form from the State's Attorney acknowledging that the State's Attorney took control of the items, and failed to return such a form to the Evidence Recovery and Property Section of the police department. (*Id.* at 2–3, Ex. A.) Jones argues that this evidence is relevant because the items taken from the police department's Evidence Recovery and Property Section "form the basis for the arrest of [Jones]." (*Id.* at 3.) Jones also points to a defendant who removed "alleged proof of residency inventory #12625968" but did not attempt to recover the item after turning it over to the State's Attorney. (*Id.*) Jones indicates that the defendant did not know what the "proof of residency"

7

was.  (*Id.*)  In addition, Jones argues that a Defendant removed photos of Charles Jones from evidence at the Chicago Police Department but does not know what happened to the photos or what was depicted in them.  (*Id.*)  Finally, Jones claims that Defendants have not turned over forms showing that the State's Attorney's Office received inventoried evidence that was removed from Chicago Police Department custody, nor have Defendants shown that any of these items were returned to the police department.  (*Id.* at 4.)

Jones seeks admission of the above evidence because "[e]vidence which Defendants claim created probable cause to arrest Charles Jones has disappeared and will not be introduced at trial."  (R. 125 at 4.)  This, Jones contends, "raises the rational suspicion that the evidence wasn't what the Defendants claimed it was" and that Defendants engaged in a conspiracy.  (*Id.*)  Jones "carries a heavy burden under [Federal Rules of Evidence] 401 and 403" to introduce evidence of violations of department rules.  *See Martinez*, 2016 WL 3538823, at *6 (quoting *Gonzalez*, 2015 WL 3671641, at *13).  Here, the Court questions how Defendants' failure to adhere to departmental rules—separate from questioning or testimony about whether evidence against Jones has gone missing—is probative of a lack of probable cause or the existence of a conspiracy.  Additionally, even if such evidence were relevant, it is questionable whether it passes Rule 403.  Accordingly, at this time, the Court grants Defendants' motion in limine without prejudice to Jones's ability to seek admission of evidence of a violation of police department rules if he first raises the issue outside the presence of the jury.  *See Gonzalez v. City of Elgin*, No. 06-cv-5321, Dkt. No. 278 (N.D. Ill. Aug. 4, 2010).

### C.     Motion in Limine #7: Evidence Regarding Indemnification by the City of Chicago

Defendants seek to bar "[a]ny comment on indemnification by the City of Chicago."  (R. 115 at 7.)  In general, courts bar evidence of indemnification because it may encourage juries to

inflate compensatory damages awards. *See Hill*, 2011 WL 3205304, at *4 (citing *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998)). Jones may, however, introduce evidence of the City's indemnification if Defendants "open[] the door by presenting evidence of their financial condition." *Id.*; *see also Gonzalez*, 2015 WL 3671641, at *7 ("[I]f Defendants plead poverty as to punitive damages, they open the door for Plaintiff to offer evidence of indemnification as to compensatory damages."). Defendants' motion in limine number 7 is therefore granted in part and denied in part.

**D.      Motion in Limine #8: Referencing Punishing or Sending a Message to the City**

Defendants seek to bar Jones "from making any argument that the jury should 'send a message' to the City with its verdict, or that the jury should somehow punish the City with its verdict." (R. 115 at 8.) Defendants also seek to bar Jones from implying to the jury that punishment can serve as a legitimate basis for award against the City. (*Id.*) Jones "has no objection to not referring to 'sending a message' to the City of Chicago since [the City is] not responsible for punitive damages." (R. 125 at 6.) Accordingly, the Court grants Defendants' motion that Jones cannot make a reference to the jury "sending a message" to the City or punishing the City. Additionally, Jones cannot suggest that the City should be punished, as such an argument could only be relevant to punitive damages, and the City cannot be liable for punitive damages. *See Case v. Town of Cicero*, No. 10 C 7392, 2013 WL 5645780, at *10 (N.D. Ill. Oct. 16, 2013); *Obrycka v. City of Chicago*, No. 07 C 2372, 2012 WL 4060293, at *2 (N.D. Ill. Sept. 14, 2012). This prohibition also applies to referencing sending a message or punishing the Chicago Police Department, as "[i]nvoking the department is tantamount to invoking the city itself." *Martinez*, 2016 WL 3538823, at *14.

Jones, however, contends that he may ask the jury to "send a message" to deter the individual Defendants and other police officers from behaving as Defendants did. (R. 125 at 6.) Jones is correct that he may argue that punitive damages can serve as an example to other officers "that they should not do *what Defendants did in this case*." *Id.* at *14 (emphasis in original). Jones is entitled to ask the jury to award punitive damages and send a message to Defendants or to other police officers generally to deter the type of misconduct Jones alleges in this case. *Id.* at 15 ("Plaintiff is entitled to ask the jury to send a message, in the form of an award of punitive (not compensatory) damages, to Defendants or to other police officers generally."); *see also Case*, 2013 WL 5645780, at *10 ("Courts do allow plaintiffs to ask juries to 'send a message' to deter future misconduct by police officers by assessing punitive damages.").

### E. Motion in Limine #9: Barring Evidence or Argument that Chicago Police Department Personnel Are Being Paid by the City to Appear in Court and that they Spent Time with an Attorney to Prepare for Trial

Defendants argue that Jones cannot reference or elicit testimony regarding whether witnesses from the Chicago Police Department are being paid to testify. The Court grants this motion in part, as "evidence that police personnel are being paid their normal wage to appear in court is outweighed by the potential prejudice of that argument" under Rule 403. *Martinez*, 2016 WL 3538823, at *15. Plaintiff may, however, "ask [police department] personnel whether they are being paid *more than* their normal wage to testify, and, if they are, Plaintiff can argue regarding the officers' potential bias." *Id.* (emphasis in original); *see also Torres v. City of Chicago*, No. 12 C 7844, 2015 WL 12843889, at *10 (N.D. Ill. Oct. 28, 2015).

Defendants also seek to "bar any evidence that Defendant Officers and any City employee witness spent time talking to an attorney to prepare for trial." (R. 115 at 9.) Jones

argues that it is proper for him "to question the Defendants' meetings with their attorneys to show the amount of preparation that went into the Defendants' testimony." (R. 125 at 7.) He also contends that it is appropriate to question Defendants regarding whether other Defendants were present when they prepared for their testimony with their attorneys. The Court agrees Jones may ask Defendants if they met with attorneys to prepare for trial and, if so, for how long. Such questioning is relevant to demeanor and credibility (*e.g.*, it may help explain why a witness's testimony is particularly "polished"). Additionally, Jones may ask Defendants if they prepared for trial with other Defendants present, as this is relevant to the issue of whether Defendants have synchronized their testimony. If Jones pursues these questions the Court will give the Seventh Circuit pattern jury instruction that "[i]t is proper for a lawyer to meet with any witnesses in preparation for trial," as this instruction "should be given where evidence regarding an attorney's meeting with a witness has been the subject of trial testimony." *See* Pattern Civil Jury Instructions of the Seventh Circuit 1.16 at 22 (2015).

To avoid a significant danger of unfair prejudice, Jones may not argue or imply that meeting with an attorney is somehow improper, and he may not imply or argue that (1) Defendants met with their attorneys out of fear of wrongdoing (*e.g.*, by asking Defendants if they contacted their attorneys shortly after the arrest or charging of Jones), or (2) Defendants altered their testimony as a result of meeting with an attorney without some credible evidence substantiating such a claim that Jones must first raise with the Court. *See Martinez*, 2016 WL 3538823, at *14.

### F. Motion in Limine #14: Removing the City as a Named Trial Defendant

Defendants argue that the Court should remove the City as a named Defendant from this case, including by removing the City from the case caption and the verdict form. (R. 115 at 12.)

Defendants argue that failing to do so "would only serve to confuse the jurors and improperly signal to the jury that 'deep pockets' are available to pay any judgment." The Court disagrees and therefore denies this motion in limine. The City is still a Defendant in this case under a respondeat superior theory for malicious prosecution as well as for Jones's indemnification claim. In similar circumstances, courts have declined the relief Defendants request. *See Bruce v. City of Chicago*, No. 09 C 4837, 2011 WL 3471074, at *4 (N.D. Ill. July 29, 2011) ("At this time, the Court will not strike the City of Chicago from the caption because Plaintiff has asserted a state law claim for respondeat superior against the City. The City is a party to the case and should remain in the case caption."); *see also Wilbon v. Plovanich*, No. 12 C 1132, 2016 WL 890671, at *3 (N.D. Ill. Mar. 9, 2016).

### G. Motion in Limine #15: Barring Argument that the Search Warrant Was Invalid, False, Unsupported by Probable Cause, or that Defendants Conducted an Insufficient Investigation to Establish Probable Cause for the Warrant

Defendants seek to bar testimony or argument related to the warrant's invalidity, whether probable cause existed for the warrant's issuance, or whether Defendants conducted a sufficient investigation to establish probable cause. (R. 115 at 12.) The Court previously resolved the validity of the warrant at the summary-judgment stage, and it is inappropriate for Jones to relitigate those issues at trial. Jones appears to realize this fact, agreeing to not introduce evidence as to the warrant's invalidity. The Court therefore grants this motion.[1]

### H. Motion in Limine #16: Barring Testimony of Alleged Excessive Force

Defendants seek to bar testimony about the alleged use of excessive force against Sharmaine Williams (who previously was a defendant in this case, but later voluntarily dismissed

---

[1] Jones also argues that the government should not mention the warrant at all. (R. 125 at 8.) It is, however, proper for the government to reference the warrant, as it is an important component of the events leading to Jones's arrest and explains why the officers were at the residence.

all claims against Defendants).  (R. 115 at 13–14; R. 39, 47.)  Jones agrees that "there will be no testimony regarding the alleged excessive force used . . . against Sharmaine Williams."  (R. 125 at 9.)  The Court grants Defendants' motion to the extent the parties agree.

Defendants also seek to bar testimony regarding the level of force used against Jones during his arrest.  (R. 115 at 14.)  Jones argues, however, that "there is no reason why Plaintiff should be prohibited from testifying regarding the facts of his arrest."  (R. 125 at 9.)  The Court grants Defendants' motion without prejudice because Jones has no excessive force claim and does not articulate at this time how testimony regarding the amount of force used against him is relevant.  If this issue becomes relevant to Jones's case, he should front the issue with Court outside the presence of the jury and the Court will consider whether evidence related to the force used against Jones is relevant and admissible under Rule 403.

## II.    Jones's Motions in Limine

### A.    Motion in Limine #2: Allowing Jones to Call Party and Non-party City Police Officers as Adverse Witnesses

Jones seeks to call as adverse witnesses individual defendant police officers as well as other police officers who are not parties to this case.  (R. 114 at 2.)  Defendants do not object to Jones designating the defendant officers as adverse witnesses.  (R. 133 at 1.)  They do, however, object to the designation of other police officers as adverse witnesses because Jones "does not demonstrate in his motion that other police officers [he] intends to call were heavily involved, or involved at all in his arrest."

While "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony," the Court should allow leading questions "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party."  Fed. R. Evid. 611(c)(2).  When the City is a defendant in a § 1983 action and Chicago police officers are

present at the incident giving rise to the lawsuit, they are witnesses "identified with an adverse party." *See Ratliff v. City of Chicago*, No. 10-cv-739, 2013 WL 3388745, at \*6 (N.D. Ill. July 8, 2013) (citing *Ellis v. City of Chicago*, 667 F.2d 606, 612–13 (7th Cir. 1981); *Paradiso v. Obaldo*, No. 07 CV 4247, 2009 WL 3272217, at \*7 (N.D. Ill. Oct. 8, 2009).

Jones may call police officers who were present at the arrest. If he does, he may ask these witnesses leading questions as "witness[es] identified with an adverse party." Indeed, in *Ratliff v. City of Chicago*, even police officers with a "tangential or limited" involvement with the case who were not present during an arrest that was at issue were witnesses identified with an adverse party. 2013 WL 3388745, at \*7. Accordingly, the Court grants Jones's motion.

**B.      Motions in Limine #6 and #10: Excluding Speculation as to Why a Police Officer Might Arrest a Citizen and Excluding Testimony that Officers Believed that They Had Probable Cause**

Jones seeks to bar Defendants from introducing testimony "regarding the various reasons why a police officer *might* arrest a citizen" in hypothetical dangerous situations which are not at issue. (R. 114 at 5–6.) Jones also seeks to bar "[a]ny testimony that Defendants 'believed' they had probable cause to arrest [Jones]." (*Id.* at 8.) Defendants do not disagree. (R. 133 at 2.) Instead, they take issue with Jones's statement that "the Defendants may testify as to the *facts of what happened on* June 1, 2012" as overly vague and contrary to the probable cause analysis, which takes into account the totality of the circumstances. (R. 133 at 2 (emphasis in original) (citing R. 114 at 8).) The Court will not address this vague aspect of Jones's motion at this time. Instead, Jones may object at trial if he believes Defendants are eliciting irrelevant testimony. Accordingly, the Court grants Jones's motions only to the extent the parties agree.

### C. Motions in Limine #7 and #9: Barring Defendants from Portraying Police as Heroes or Dramatizing Their Work and Barring Testimony that Elicits Sympathy for the Police Based on Their Position

Jones seeks to bar Defendants from "distract[ing] the jury from the facts of this case by portraying the police work they do as fraught with danger requiring significant risks." (R. 114 at 6.) Defendants may do this, Jones contends, to "state or insinuate that [the police] should be able to 'cut corners' in their attempt to stop crime" or "garner sympathy from the jury." (*Id.*; *see also id.* at 7–8.) Jones requests that the Court prevent Defendants and their witnesses from making statements such as "[p]olice officers are heroes," "[p]olice officers serve and protect you," "[p]olice officers risk their lives every day," "[p]olice officers do not falsely arrest people for no reason," and "[p]olice officers would never risk their careers by doing what [Jones] alleges." (*Id.* at 6.) Jones also asks the Court to bar "[a]ny comment or argument in opening or closing or attempts to elicit testimony to inspire passion or compassion in favor of Defendants based upon their position as police officers." (*Id.* at 7–8.)

Defendants say that they will not "delv[e] into hyperbole or speculating on what unnamed, unknown police officers in general may or may not do." (R. 133 at 3.) They oppose Jones's motions, however, because, according to Defendants, they "mustn't be subject to broad-brush, vague attempts to limit their ability to explain the everyday requirements of *their* jobs and counsel should be able to argue accordingly." (*Id.*) Defendants also argue that Jones's requested "vague, broad restrictions based on unfounded fears of 'pro police hyperbole'" are unwarranted because they prevent Defendants from being able to defend their case. (*Id.*)

Any general arguments or mentions of police officers risking their lives or their heroism are irrelevant and overly prejudicial to merit admission. *See Dyson v. Szarzynski*, No. 13 CV 3248, 2014 WL 7205591, at *2 (N.D. Ill. Dec. 18, 2014) ("The court agrees with Dyson that

risks faced by police officers in general do not have any tendency to make any consequential facts in this particular action more or less likely. Neither a claim for false arrest nor malicious prosecution relates to police officers risking their lives on the job. To the contrary, 'heroizing' the deeds of police officers might unfairly sway a jury into the consideration of matters outside the scope of fact finding."); *Battle v. O'Shaughnessy*, No. 11 C 1138, 2013 WL 3984463, at *6 & n.5 (N.D. Ill. Aug. 2, 2013). It does not appear, however, that Defendants intend to make such general arguments or make such general statements. Instead, they wish to make arguments and elicit testimony about the requirements of their professions to the extent they are relevant to the reasonableness of their conduct. This is permissible and appropriate. *See Logwood v. City of Chicago*, No. 11 C 4932, 2013 WL 1385559, at *2 (N.D. Ill. Apr. 4, 2013) ("Defendants correctly point out that some evidence concerning the prior professional experiences of Defendants Officers may be relevant in assessing the reasonableness of their conduct."). An officer's training and experience, for example, may be relevant to the arrest in this case because "[i]n making probable-cause determinations, law enforcement agents are entitled to draw reasonable inferences from the facts before them, based on their training and experience." *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003). Accordingly, while Defendants may not make or elicit hyperbolic or irrelevant general statements regarding police heroism or the danger that officers face, they may elicit testimony and make arguments about their training and experience as police officers to the extent such experience is relevant to the issues in this case. Jones's motions are therefore granted in part and denied in part.

> ### D. Motion in Limine #8: Precluding Defendants from Commenting on Jones's Failure to Call Witnesses or Produce Evidence

Jones says that he is not planning to call every witness who could testify regarding his case and that Defendants "should be precluded from making any reference to or comment about

Plaintiff's decision regarding witnesses." (R. 114 at 7.) Jones argues that "[s]tatements or remarks regarding the number of witnesses who testified should be prohibited since they could be used by the jury to conclude that [Jones] did not prove his case, is hiding something or other unwarranted conclusions." (*Id.*)

Defendants contend that they should be able to argue that Jones has not produced sufficient evidence to meet his burden. The Court agrees. Defendants further argue, however, that this means they may argue that "certain witnesses did not testify or that certain evidence was not produced before the jury." The Court agrees only to a certain extent. Defendants are free to point out holes and deficient evidence in a plaintiff's case. If a plaintiff claimed he was severely injured in an accident, for example, a defendant could point out that the plaintiff failed to produce evidence supporting this claim—for example, medical records, photographs, or testimony from family members who witnessed the plaintiff after the accident. A defendant goes too far, however, when he points out the plaintiff's failure to call a particular witness to raise an adverse inference or imply that the finder of fact should make such an inference without the requisite showing under *Oxman v. WLS-TV*, 12 F.3d 652, 661 (7th Cir. 1993) ("Before a party can argue to the trier of fact that an adverse inference should be drawn from another party's failure to call a witness, the complaining party must establish that the missing witness was peculiarly in the power of the other party to produce"). *See Torres*, 2015 WL 12843889, at *6; *Ross v. City of Chicago*, No. 13 C 751, 2014 WL 1344279, at *1 (N.D. Ill. Apr. 3, 2014) *Ratliff*, 2012 WL 5845551, at *5. The Court therefore grants Jones's motion in part and denies it in part. In addition, the Court will instruct the jury (1) that it "may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number," and (2) that it "need not

accept the testimony of the larger number of witnesses."  *See* Pattern Civil Jury Instructions of the Seventh Circuit 1.17 at 23 (2015).

### E. Motion in Limine #12: Barring Evidence of or References to Jones's Arrests, Convictions, or Criminal History

Jones has been arrested a number of times and convicted of felonies.  (R. 114 at 9.) According to Jones, before the arrest at issue in this case, law enforcement last arrested him in 1991.  (*Id.*)  In 1992, he pled guilty to attempted murder and was sentenced to ten years imprisonment.  (*Id.* at 10.)  In 1993, Jones was found guilty of three counts of murder and sentenced to thirty years imprisonment.  (*Id.* at 10.)  The Illinois Department of Corrections released Jones from confinement for the murder conviction in 2012.  (*Id.*)

Jones seeks to bar evidence of his murder conviction.  (*Id.* at 11.)  Under Federal Rule of Evidence 609(a)(1)(A), when a party wishes to attack a witness's character for truthfulness, evidence of a conviction for a crime punishable by imprisonment for more than a year "must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant."  If, however, "10 years have passed since the witness's conviction or release from confinement, whichever is later," the evidence of the conviction is only admissible, if, among other things, "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."  Fed. R. Evid. 609(b)(1).  Jones agrees that his murder conviction was for a crime punishable by more than one year imprisonment.  (R. 114 at 11.)  He argues, however, that his conviction is more than ten years old.  (*Id.*)  While this is true, Rule 609(b) applies when "more than 10 years have passed since the witness's conviction *or release from confinement for it, whichever is later*."  Fed. R. Evid. 609(b) (emphasis added).  Here, Jones was released within the past ten years and therefore Rule 609(b) does not bar this conviction.

The Court's analysis then comes down to Rule 403.  In criminal cases, the Seventh Circuit has identified five considerations for weighing probative value against prejudicial effect: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *United States v. Montgomery,* 390 F.3d 1013, 1015 (7th Cir. 2004) (citing *United States v. Mahone,* 537 F.2d 922, 929 (7th Cir. 1976); *Buchanan v. McCann,* No. 08 C 7063, 2012 WL 1987917, at *1 (N.D. Ill. June 4, 2012); *Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 2637214, at *1 (N.D. Ill. June 6, 2011).  "While not all of those factors will apply in civil cases, the same general concerns may illuminate the court's analysis."  *Buchanan*, 2012 WL 1987917, at *1.  Courts have broad discretion under Rule 403.  *Anderson v. City of Chicago*, No. 09 C 2311, 2010 WL 4928875, at *1 (N.D. Ill. Nov. 30, 2010) (citing *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002)).  They should take care, however, "to ensure that a civil rights plaintiff's criminal past is not being used to unfairly prejudice him or her."  *Id.* (quoting *Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992)).

The first two factors weigh in Jones's favor.  Murder is not a crime that is particularly indicative of untruthfulness.  *See Buchanan*, 2012 WL 1987917, at *1 (explaining that the first factor weighed in the plaintiff's favor in a § 1983 case because "[m]urder does not implicate truthfulness"); *Jones v. Sheahan*, No. 99 C 3669, 01 C 1844, 2003 WL 21654279, at *2 (N.D. Ill. July 14, 2003) (excluding evidence of a murder conviction under Rule 609 and 403 because "[t]he offense of murder is not highly probative of credibility, and the risk of unfair prejudice would result from the admission of that evidence is substantial"); *cf. Barber v. City of Chicago*, 725 F.3d 702, 714-15 (7th Cir. 2013) ("A felony conviction for possession of stolen property (or

possession of a stolen motor vehicle) is not a crime of dishonesty per se but it is more probative of dishonesty than other crimes, like murder or assault." (citations omitted)); *Christmas v. Sanders*, 759 F.2d 1284, 1292 (7th Cir. 1985) ("[A] conviction for rape was not highly probative of credibility."). As for the timing, the murder took place more than 20 years before the incident in question, and Jones has not been convicted of a crime since.

The third factor weighs in favor of admission.[2] Where the alleged current offenses at issue—in this case, unlawful use of a weapon and possession of cannabis—are dissimilar to the past conviction, the third factor favors admission. *See Montgomery*, 390 F.3d at 1016 (explaining that "[g]iven the dissimilarity of Montgomery's current offense and his prior convictions," among other factors, the district court did not abuse its discretion in admitting evidence of the convictions); *United States v. Hernandez*, 106 F.3d 737, 740 (7th Cir. 1997) (noting that similarity between the current crime and the past crime increases the "possibility of the jury's inferring guilt on a ground not permissible under Rule 404(b)"). Here, while there could be some relationship between murder and unlawful use of a weapon, depending on how Jones committed the murder, neither party has indicated how the murder was committed.[3] The Court therefore concludes that the current offense and the murder conviction are sufficiently distinct to weigh in favor of admission.

The final two factors favor admission. As Jones admits, his testimony will be important, (R. 114 at 12), though it is not as important as in some cases where the plaintiff is the only

[2] The Court notes that this factor is less important in the context of a § 1983 lawsuit than in a criminal case. Jones is not on trial for a criminal offense, and therefore the effect of prejudice based on the jury associating his prior crime with his conduct relevant to this case is lower than in a prosecution. That said, there is still a risk the jury could conflate his past conduct with his conduct at issue in this case, and therefore this factor still has some relevance. If Jones had a past conviction for cannabis possession, for example, a jury may be more susceptible to concluding that the government had probable cause in this case to arrest him for cannabis possession in spite of the evidence.

[3] Jones carries the burden to show that evidence of his prior conviction is not admissible under Rule 609. *Hill*, 2011 WL 2637214, at *3.

witness other than the defendants who will testify, *see Hill*, 2011 WL 2637214, at *2; *see also Buchanan*, 2012 WL 1987917, at *1 ("Plaintiff correctly observes that his case does not rest entirely on his credibility alone, because he will call other witness to testify at trial. Nevertheless, Plaintiff's testimony will be critical to the jury's comprehension and evaluation of the evidence."). The issue of his credibility is also important, as Jones's testimony will contradict the government's defense. *See United States v. Gant*, 396 F.3d 906, 910 (7th Cir. 2005); *Buchanan*, 2012 WL 1987917, at *1.

Three factors weigh in favor of admission and two weigh against it. Additionally, because the conviction is for such a serious crime, the Court must exercise the utmost care to avoid the risk that the jury will consider the evidence of Jones's conviction for improper purposes. *See Barber*, 725 F.3d at 714 ("Presenting a § 1983 plaintiff's criminal history to the jury presents a substantial risk that the jury will render a defense verdict based not on the evidence but on emotions or other improper motives, such as a belief that bad people should not be permitted to recover from honorable police officers."); *Jones*, 2003 WL 21654279, at *2 (evidence of Mr. Jones's murder conviction might lead a jury to deny Mr. Jones an award "'not because it doubts its veracity, but because it is appalled by his prior conduct that has nothing to do with the events in question. That is precisely the kind of unfair prejudice that Rule 403 seeks to prevent." (quoting *Earl v. Denny's, Inc.*, No. 01 C 5182, 2002 WL 31819021, at *8 (N.D. Ill. Dec. 13, 2002))). On balance, weighing the importance of Jones's testimony and credibility against the prejudice that may arise from introducing his murder conviction, the Court concludes that this case is a strong candidate for "sanitization" of prior-crimes evidence used to impeach. Defendants may impeach Jones by introducing the fact that he is a convicted felon and his date of conviction, but they may not reference his crime of conviction, the facts underlying the

conviction, or the length of his sentence, as the jury could infer the seriousness of his crime from the length of his sentence.  *See Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 626–27 (7th Cir. 2009) (noting that although the court had some reservations about the judge having rewritten history by allowing evidence that the plaintiff was convicted of selling firearms without a federal license but not allowing evidence that the plaintiff was convicted of having been a felon who sold firearms without a federal license"); *Smith v. Nurse*, No. 14-cv-5514, 2016 WL 4539698, at *4 (N.D. Ill. Aug. 31, 2016) (sanitizing the plaintiff's criminal record and allowing Defendant to introduce only the fact that the plaintiff is a convicted felon); *Pierce v. Ruiz*, No. 13 CV 6824, 2016 WL 5912890, at *3 (N.D. Ill. Oct. 11, 2016); *Tatum v. Clarke*, No. 11-C-1131, 2015 WL 6392609, at *3 (E.D. Wis. Oct. 22, 2015); *Porter v. Campbell*, No. 12-2092, 2013 WL 2949154, at *4 (C.D. Ill. June 14, 2013); *Buchanan*, 2012 WL 1987917, at *2; *Anderson*, 2010 WL 4928875, at *3.[4]

Jones also seeks to bar evidence of his prior arrests.  (R. 114 at 10.)  Defendants say they "do not intend to present evidence regarding Plaintiff's prior arrests that did not result in convictions as a prior bad act or to make a showing that Plaintiff has a propensity to commit crime."  (R. 133 at 4.)  Defendants, however, argue that they should be able to inquire into his past arrest history if Jones "were to open the door by introducing evidence about his character for truthfulness and law-abiding citizenship."  (*Id.* at 4.)  Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Civ. P. 404(b)(2).

---

[4] The Court bars evidence for impeachment purposes of Jones's conviction for attempted murder.  Rule 609(b) applies to that conviction, and the probative value of that conviction does not substantially outweigh its prejudicial effect.

Courts have barred evidence of prior arrests under Rule 403 (which is part of the Rule 404(b) analysis, *see United States v. Gomez*, 763 F.3d 845, 857 (7th Cir. 2014)) unless the plaintiff "opens the door by stating that he has never been arrested." *See Bruce*, 2011 WL 3471074, at *9. The Court will not, however, allow Defendants to use evidence of Jones's past arrest history for general impeachment purposes of calling into question his truthfulness or law-abiding citizenship. *See Barber*, 725 F.3d at 709 ("The well-established, general rule is that a witness's credibility may not be impeached by evidence of his or her prior arrests, accusations or charges."); *see also Nelson v. City of Chicago*, 810 F.3d 1061, 1068 (7th Cir. 2016) (rejecting the rationale that prior arrests are admissible to impeach a plaintiff's character for truthful and law-abiding citizenship). To do otherwise would run afoul of Rule 403.

The Court will, however, take under advisement Defendants' argument that Jones's arrest history and past convictions may be relevant to the issue of damages. While the Seventh Circuit has said that the risk of unfair prejudice arising from the introduction of past arrests is high and their probative value is "miniscule"—at least where the arrests were distant in time and the plaintiff "limited his claimed emotional injury to the fear he felt during [a particular traffic stop]"—the court did not say that there are no circumstances in which arrest history is admissible on the issue of damages. *Nelson*, 810 F.3d at 1068–69; *see also Townsend v. Benya*, 287 F. Supp. 2d 868, 874 (N.D. Ill. 2003) (indicating that "if Plaintiffs argue they were uniquely embarrassed by the April 4, 2002, arrest, then Defendants may introduce Plaintiffs' numerous prior arrest to diminish the impact of the particular arrest in question"). The most prudent course is therefore to wait to see what evidence Jones uses to support his claim for damages, consider what arrests and past convictions Defendants would like to introduce, and then engage in the appropriate Rule 403 analysis. *See Brooks*, 2015 WL 3545386, at *2 ("If Plaintiff offers

evidence regarding the emotional damage he suffered as a result of his incarceration in January 2013, Defendants will be permitted to question Plaintiff regarding the fact that he was incarcerated previously as well as the length and conditions of that prior confinement. To address any potential prejudice, the Court will give the jury a limiting instruction to make clear that they may consider the evidence only as proof of the emotional harm allegedly suffered by Plaintiff as a result of his more recent incarceration."); *Dyson*, 2014 WL 7205591, at *5–6 (explaining that there were ways that the plaintiff could open the door to his prior arrests).

In sum, the Court grants in part and denies in part Jones's motion.

**F.      Motion in Limine #14: Prohibiting Defendants from Referring to the Neighborhood as a High Crime or Drug Neighborhood, a Criminal Area, or Making Any Reference to Gangs or Participation in a Gang Enforcement Unit**

Jones seeks to preclude Defendants from making a reference to a "high crime area." (R. 114 at 14–15.) Defendants indicate that they do not intend to "suggest[] a 'high crime area' in reference to the residence where Plaintiff was arrested." (R. 133 at 5–6.) Thus, the Court grants Jones's motion to the extent of the parties' agreement.

Jones also seeks to bar Defendants from referencing the title of a report prepared in this case—"Gang Enforcement Supplemental Report"—as well as the title of a team one of the Defendants works for—"the Gang School Safety Team." (R. 114 at 16–17.) The Seventh Circuit has "recognized there is 'substantial risk of unfair prejudice attached to gang affiliation evidence,' but 'under appropriate circumstances, gang evidence has probative value warranting its admission over claims of prejudice.'" *United States v. Alviar*, 573 F.3d 526, 536 (7th Cir. 2009) (quoting *United States v. Irvin*, 87 F.3d 860, 864 (7th Cir. 1996)). "As evidence of an officer's experience, assignment, and qualifications, the mere mention that the officer is a gang specialist or assigned to a gang unit typically is appropriate and harmless." *Sanchez v. City of*

*Chicago*, 700 F.3d 919, 932 (7th Cir. 2012). Nevertheless where a case has nothing to do with gang activity, which Defendants appear to admit, courts have barred the defendant officers from mentioning they were in a gang unit because of its limited relevance and unfair prejudicial effect. *See, e.g.*, *Gonzalez*, 2015 WL 3671641, at *3; *Case*, 2013 WL 5645780, at *6 (barring such evidence, though noting that the court would "revisit th[e] issue at trial if the evidence shows a greater need to introduce the officers' experience in the gang unit"); *Smith v. Hunt*, No. 08 C 6982, 2011 WL 9737, at *3 (N.D. Ill. Jan. 3, 2011) ("The Court granted Smith's Motion to bar any reference to the Defendants as 'Gang' Officers. The Court found that such evidence is not relevant because this is not a gang case and any mention of gang activity in Chicago is prejudicial and may inflame the jury. Should the Defendants testify, those assigned to the Gang Unit shall refer to themselves as Tactical Officers." (citation omitted)). Here, the Court concludes that allowing one of the Defendants to reference that he was part of the "Gang Safety School Team" raises an unacceptable risk of unfair prejudice because it could indicate to the jury that Jones is somehow affiliated with gangs and their activities in schools. Additionally, the Court bars reference to the report, as it unfairly implies that Jones had a gang affiliation or that there is a gang-related component to his case.[5]

For the above reasons, the Court grants this motion.

### G. Motion in Limine #15: Barring Defendants from Introducing Evidence that if Jones Prevails, His Attorneys Could Receive a Fee Award

Jones seeks to bar Defendants from making reference to the fact that if he prevails, his attorneys may be entitled to an award of fees. (R. 114 at 17.) Defendants argue that this issue can be addressed through the giving of Defendants' Proposed Jury Instruction No. 6. (R. 133 at 6; *see* R. 117 at 54.) Defendants' proposed jury instruction says (1) that if the jury finds any

---

[5] Defendants agree that they will not attempt to suggest or introduce evidence that Jones was gang-affiliated.

Defendant liable for damages, the jury should not consider attorneys' fees, and (2) that "fees to Plaintiffs' counsel are not an element of compensatory damages for you to decide." (R. 117 at 54.) It thus appears that Defendants agree that introducing the issue of attorneys' fees is improper. The Court agrees as well. Accordingly, the Court grants Jones's motion. The Court will address the proposed jury instruction at a later date.

### H. Motion in Limine #17: Barring Defendants from Referring to the Search of an Automobile and the Recovery of the Title from the Automobile

According to Jones, after the police arrested him, they recovered keys from him. (R. 114 at 18.) The police then searched an automobile parked outside of the residence and represent that they found a title in the car that listed Jones's residence as the Carpenter Street address. (*Id.*) Jones argues that this evidence is irrelevant, as the police discovered it after Jones's arrest and therefore has no bearing on probable cause, and is the "fruit of a warrantless, unjustified and illegal search which cannot be justified by the arrest of the Plaintiff." (*Id.*) Finally, Jones says that Defendants have not given him any documentation of the title in Defendants' 26(a) discovery. (*Id.* at 19.)

Defendants argue that they intend to use evidence of the vehicle title as impeachment evidence should Jones argue that he did not live at the Carpenter Street address. (R. 133 at 6.) Evidence offered solely for impeachment purposes does not have to be disclosed before trial. *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 869 (7th Cir. 2005); *Bruce*, 2011 WL 3741074, at *12. Defendants do not say that they wish to use the evidence to prove the existence of probable cause. Accordingly, Jones's motion is granted with respect to barring Defendants from using the title as substantive evidence to support a finding of probable cause. Defendants may, however, use the evidence for impeachment purposes in the manner they request. Though Jones appears to suggest that the exclusionary rule or the "fruit of the poisonous tree doctrine"

has some application here, these legal doctrines do not apply in § 1983 actions or suits for malicious prosecution under Illinois law. *Vaughn v. Chapman*, No. 16-1065, 2016 WL 5944726, at *3 (7th Cir. Oct. 13, 2016) (unpublished); *Medlock v. Trs. of Ind. Univ.*, 738 F.3d 867, 871 (7th Cir. 2013) ("But the exclusionary rule—the rule that renders evidence obtained in violation of the Fourth Amendment inadmissible in (some) judicial proceedings—is applicable only to criminal proceedings."); *see also Martin v. City of Chicago*, No. 15-cv-04576, 2017 WL 56633, at *4 (N.D. Ill. Jan 5, 2017). Accordingly, Jones's motion is denied with respect to Defendants using the evidence of the title for impeachment purposes.

I.      **Motion in Limine #18: Prohibiting Defendants from Referring to a Cooperating Individual or Confidential Informant, or Referring to the Basis of the Search Warrant or the Warrant Itself**

Jones argues that the Court should bar Defendants from presenting testimony about the John Doe cooperator upon whom Defendants relied in preparing the search warrant. (R. 114 at 19.) Additionally, Jones argues that Defendants should not be able to refer to the information received from the cooperator at trial. (*Id.*) Jones relies on cases holding that when parties assert a privilege to preclude their opponents from obtaining information in discovery, they cannot use that information at trial. (R. 114 at 19–20 (citing, among other authority, *Manning v. Buchan*, 357 F. Supp. 2d 1036, 1048 (N.D. Ill. 2004)).)

Defendants argue that the only information over which they assert a privilege is the name of the confidential informant. (R. 133 at 7.) Thus, they argue that, at the "very least," they should be able to discuss the fact that they possessed a legally valid warrant, otherwise "the jury would be left to wonder what in the world precipitated Defendants being at 5645 S. Carpenter and searching for narcotics, and it would open the door for jurors to speculate that possibly Defendants did not even belong there in the first place, an issue that has been argued and

resolved by this court already." (*Id.* at 8.) The Court agrees. Additionally, Defendants argue

that they should be able to refer to the information "contained in the search warrant and relied

upon to establish probable cause for the search warrant (which th[e] Court ruled was valid and

supported by such probable cause on summary judgment)." (*Id.* at 7.) The Court again agrees.

An arrest is constitutional if supported by probable cause. *United States v. Sands*, 815 F.3d

1057, 1061–62 (7th Cir. 2015). Probable cause exists "if the totality of the facts and

circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent

person in believing that the arrestee had committed, was committing, or was about to commit a

crime." *Id.* (quoting *Abbott v. Sangamon Cty.*, 705 F.3d 706, 714 (7th Cir. 2013)). In forming

probable cause, an officer may rely upon "information provided by a confidential informant, as

long as that information is reliable." *Id.* (quoting *United States v. Levy*, 990 F.2d 971, 973 (7th

Cir. 1993)). The reliability of the confidential informant "may be established by the reliability of

the informant in the past, corroboration by independent police work or observations, or by other

means." *Id.*; *see also United States v. Mustapher*, 459 F. Supp. 2d 752, 756 (N.D. Ill. 2006).

Whether the confidential informant was in fact telling the truth is not at issue in this case.

Instead, it is relevant whether the police officers relied on the informant in the warrant (*e.g.*, the

tip from the informant) in making their arrest and, if so, whether the officers had enough

information to satisfy themselves of the confidential informant's reliability.[6]

The Court denies Jones's motion in limine. Jones is free to submit a limiting instruction

regarding this evidence.

---

[6] It is also worth noting that Jones has had the opportunity to question the warrant's affiant about the circumstances surrounding his use of information from the confidential informant. Additionally, Jones had the opportunity to depose the judge who signed the search warrant. Finally, Jones has done nothing to overcome the privilege Defendants have asserted over the identity of the confidential informant.

**J.     Motion in Limine #19: Barring Defendants from Testifying as Experts Regarding the Issue of Drugs and Bullets**

Jones next argues that Defendants should not be able to testify regarding the age or condition of the bullets or "speculative testimony regarding the cannabis" they recovered.  (R. 114 at 20–21.)  Defendants represent they "do not seek to testify as experts" and do not "seek to offer testimony based on scientific, technical, or other specialized knowledge."  (R. 133 at 9.) Instead, they wish to offer their testimony "as lay witnesses rationally based on their own perceptions as police officers."  (*Id.*)

Jones's motion is premature.  A police officer may testify about his impressions "based on his own personal observations and perceptions derived from a particular case" under Federal Rule of Evidence 701.  *See United States v. Rollins*, 544 F.3d 820, 833 (7th Cir. 2008). Additionally, a police officer does not necessarily testify as an expert if he is testifying about his state of mind and observations on a particular day, even if his specialized knowledge informed his mental state.  *United States v. Oriedo*, 498 F.3d 593, 602 (7th Cir. 2007).  At this point, the Court cannot conclude that Defendants cannot testify as lay witnesses about the age of the bullets, whether they were live, or the weight of the cannabis.  The Court simply does not have enough information about the foundation for such testimony.  It is not clear, for example, whether the officers' observation of the bullets relied on non-technical perception (*e.g.*, the bullets were shiny and therefore appeared to be new) or some sort of expert experience.  The Court will address this issue in the context of the trial testimony.

**K.     Motion in Limine #20: Barring Testimony About Money Recovered From Jones After the Arrest or About Any Testing of the Money**

After arresting Jones, the police performed a custodial search and recovered $743 from him.  (R. 114 at 21–22.)  They then arranged for a K9 sniff of the currency, which resulted in a

positive indication for the presence of an unspecified narcotic odor. (*Id.* at 22.) Jones argues that this evidence cannot support Defendants' case for probable cause because it occurred after the arrest. (*Id.*) Additionally, Jones cites a CNN article explaining that 90% of U.S. currency has traces of cocaine. (*Id.*) Because of this, because no cocaine was found, and because Defendant Moran testified at his deposition that the dog sniff "did not serve to indicate that Plaintiff possessed drugs," Jones seeks to bar evidence of the money and the dog sniff on relevancy grounds as well as Rule 403.

Defendants argue that they wish to use the evidence of the cash and the dog sniff to rebut Jones's claim that he never possessed nor sold narcotics. (R. 133 at 9.) While the evidence of the cash is admissible for this purpose, as it is probative of a contention that Jones dealt drugs and not particularly unfairly prejudicial, the evidence of the dog sniff is inadmissible in this case. The government has provided no evidence of the K9's reliability and no information regarding its handler. While dog alerts to money are worthy of some probative weight, *United States v. Funds in Amount of One Hundred Thousand One Hundred and Twenty Dollars*, 730 F.3d 711, 719 (7th Cir. 2013), Defendants do not provide any indication of how the sniff in this case is reliable and therefore probative. *See United States v. Funds in the Amount of $271,080*, 816 F.3d 903, 909 (7th Cir. 2016) (citing a Third Circuit case for the proposition that "because government presented no evidence of particular dog's training and accuracy there was no record basis for concluding that the drug dog's alert bolsters the government's case"). In short, Defendants have provided no foundation to support the admissibility of the dog sniff, they have provided no expert evidence regarding the sniff, and introduction of the sniff goes to a collateral issue in this case rather than the key issue of probable cause, therefore raising too high a risk of jury confusion and a distracting mini-trial on the issue of dog-sniff evidence. *See Martinez*, 2016

WL 3538823, at *5 ("Before assessing the parties' motions in limine, the Court notes one overarching theme, which is its unwillingness to allow the parties to create unnecessary sideshows and mini-trials on issues of little relevance."). Accordingly, the Court grants Jones's motion in part and denies it in part.

**L.      Motion in Limine #21: Barring Defendants from Testifying Regarding the Fact that Jones Was on Parole at the Time of the Arrest**

Jones argues that the Court should bar Defendants from referencing the fact that he was on parole at the time of the incident. Defendants do not object unless Jones opens the door to questioning about his parole status. The Court, therefore, grants Jones's motion without objection and without prejudice. If Defendants believe Jones opens the door to such questioning, Defendants must front the issue with the Court outside the presence of the jury. The Court notes, however, that even if Jones opens the door, Defendants may not use evidence of Jones's parole status for the general impeachment purposes of calling into question his truthfulness or law-abiding citizenship. *See Barber*, 725 F.3d at 709; *see also Nelson v. City of Chicago*, 810 F.3d 1061, 1068 (7th Cir. 2016); *see also supra* Analysis, Section II.E.

**M.      Motion in Limine #22: Barring References to or Testimony About Alleged Hearsay Statements of Ernestine Jones**

Defendant Olson prepared a case incident report indicating that Defendant Insley said that he spoke to the now-deceased mother of Jones after the arrest. (R. 114 at 23.) Defendant Insley also testified at his deposition about this conversation. (*Id.*) He did not ask for the woman's identification, but he identified her as Jones's mother. (*Id.*) Insley reported that the woman told him that Jones stayed at the Carpenter Street address "every other day or so and when he does he sleeps upstairs." (*Id.*)[7] Jones argues that the woman's statement is inadmissible

---

[7] Defendant Hardy also testified that Defendant Insley told him that Plaintiff's mother said Jones stayed at the house.

hearsay.  Defendants argue that the statement is admissible as an excited utterance and to show the statement's effect on the listener.

A statement is admissible under the excited utterance exception if the proponent of the statement demonstrates that "(1) a startling event occurred; (2) the declarant makes the statement while under the stress of excitement caused by the startling event; and (3) the declarant's statement relates to the startling event." *United States v. Vargas*, 689 F.3d 867, 876–77 (7th Cir. 2012); Fed. R. Evid. 803(2).  The proponent of the statement has the burden of establishing each element.  *Vargas*, 689 F.3d at 877.  Defendants assert that the search and arrest of Jones was the startling event.  (R. 133 at 10.)  They fail to show, however, that Ernestine Jones's statement "relates to the startling event."  Indeed, the statement dealt not with the arrest and search themselves, but Jones's past conduct of staying at the Carpenter Street address.  *Vargas*, 689 F.3d at 871, 877 (holding that the declarant's statement—"I was here buying a truck"—did not relate to the startling event of officers effectuating an arrest because it related to a prior event, the declarant's arrival at the site of the arrest before any officers arrived).  The Court further notes that Defendants have provided no indication that Ernestine Jones was under the stress of the arrest or search when she made the statement.  Additionally, Defendants have not indicated how close in time her statement was to the alleged startling event.  This lack of evidence provides further reason why Defendants have failed to demonstrate the admissibility of this statement. Finally, courts should apply the excited utterance exception in "circumstances that may produce a condition of excitement which temporary stills the capacity of reflection and produces utterances free of conscious fabrication."  *United States v. Boyce*, 742 F.3d 792, 796 (7th Cir. 2014).  Indeed, "the statement must have been a spontaneous reaction to a startling event and not

the result of reflective thought." *Id.* Here, the Defendants fail to demonstrate that Ernestine Jones's statement was a "spontaneous reaction" rather than the product of considered reflection.

Defendants' argument that the statement is admissible under Federal Rule of Evidence 801(c) to show the statement's effect on the listener rather than to prove the truth of the matter asserted in the statement, however, is convincing. Defendants may elicit the statement to prove the information they knew supporting probable cause for the malicious prosecution claim (*i.e.*, the basis for their belief that Jones lived at the Carpenter Street address). *See Cairel v. Alderden*, 821 F.3d 823, 830–31 (7th Cir. 2016); *Moore v. Banas*, No. 11 CV 5654, 2015 WL 5612366, at *1 n.4 (N.D. Ill. Sept. 23, 2015). The Court therefore grants in part and denies in part Jones's motion.

### N. Motion in Limine #23: Barring References to Shelley Williams's Murder Conviction

Shelley Williams will testify in this case. In 1993 or 1994 he was convicted of murder, and in 2004, he was released from parole for this murder. (R. 114 at 24.) Defendants concede that the conviction therefore triggers Rule 609(b). (R. 133 at 10); *see supra* Analysis, Section II.E (discussing Rule 609). Accordingly, evidence of William's conviction is admissible to attack his character for truthfulness only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). As explained above, murder is not a crime that is particularly indicative of untruthfulness, and the prejudicial value of introducing the fact that a witness was convicted of murder is high. *See supra* Analysis, Section II.E. Defendants argue that Williams could open the door to the introduction of the evidence. In the unlikely event that occurs, Defendants may raise the issue with the Court outside the presence of the jury. *See supra* Analysis, Section II.E, L. The Court grants Jones's motion.

**O.** **Motion in Limine #24(e): Barring Defendants from Asking What Kind of Car He was Driving**

Jones argues that the Court should preclude Defendants from asking Jones what car he was driving the day of his arrest. (R. 114 at 26.) Defendants represent they will not ask what car he was driving that day, but wish to impeach Jones by questioning him about having a vehicle registered to the Carpenter Street address in the event that he testifies that he did not live there. (R. 133 at 11.) As previously noted, Defendants may impeach Jones in this manner. *See supra* Analysis, Section II.H.

**P.** **Motion in Limine #25: Barring Defendants from Testifying that They Knew of Any Suspicious or Criminal Behavior Occurring at the Carpenter Street Address Prior to June 2, 2012**

Jones seeks to bar Defendants from eliciting testimony that Defendant Malloy or Defendant Moran received information from a cooperating individual or individuals (according to Jones, Malloy said there was one cooperator and Moran said there were two). (R. 114 at 27.) According to Defendants, the informant or informants told Defendants that drug sales were taking place at the Carpenter Street address. (*Id.*) The informant or informants also described someone matching Jones's description. (*Id.*) Malloy testified that he could not remember if this informant had given him information before or after this occasion, and Defendant Moran said that he had known both cooperators for some time and that they previously had provided him with information. (*Id.*) Both Malloy and Moran testified in depositions that they had no documentation that they met with the informant or informants. (*Id.*) Moran testified that he could not remember when or where the conversation took place. (*Id.* at 27-28.) Moran and Malloy, based on the informant or informants, allegedly drove by the Carpenter Street address, but Malloy testified that he cannot recall if he and Moran saw something suspicious. (*Id.*) Malloy and Moran said that they did not communicate the above information with others until

34

telling Defendant Olson before he submitted his application for a search warrant. (*Id.* at 28.) According to Jones, "[t]his is not documented in any of the discovery Plaintiff has received," and Olson "did not refer to any that he had received from Defendants Malloy or Moran prior to obtaining the search warrant." (*Id.*) Jones seeks to bar evidence of the confidential informant(s) communications with Malloy and Moran because the communications were hearsay, evidence of the communications "is improper anonymous bolstering of character attacks," and the communications are irrelevant.

Defendants argue that that the evidence is not hearsay because it would be offered for the effect on the listener. (R. 133 at 11.) The Court agrees. Defendants fail, however, to explain the relevance of the evidence, as they do not indicate that Defendants relied on the informant or informants in forming probable cause for arrest or for prosecuting Jones. Furthermore, even if the evidence were relevant, it would be minimally so. Defendants do not indicate when the conversation took place, and the relevance of the informant(s)' information would fade with time. Additionally, Defendants do not indicate if the informant(s) personally identified Jones as the person selling drugs or what drugs he was selling. On the other hand, the evidence at issue is highly prejudicial, as it broadly ties Jones with illegal conduct for a crime for which he was neither arrested nor charged (he was arrested for possessing cannabis, not selling drugs). (R. 55 at ¶ 25). Accordingly, the Court grants Jones's motion under Rule 403.

### Q. Motion in Limine #26: Barring Evidence of Arrests or Convictions of Jones's Witnesses

Jones seeks to bar any evidence of arrests of Jones's witnesses. (R. 114 at 28–29.) Defendants do not respond to this. (R. 133 at 12.) Accordingly, the Court grants this aspect of Jones's motion to the extent it does not conflict with any of the Court's other rulings on the

motions in limine.  Indeed, "an arrest is not, in itself, probative of the arrested person's character for truthfulness."  *Nelson*, 810 F.3d at 1068.

Jones also seeks to bar references to Roseanne Williams's 3–4 felony drug-related convictions (Jones believes they are for possession of narcotics).  (R. 114 at 29.)  Jones admits that some of her convictions fall within Rule 609's ten-year period, but he argues that evidence of the convictions is too prejudicial to merit admission in light of the evidence's low probative value, as drug convictions do not relate to credibility.  (*Id.*)  Defendants argue that the convictions are admissible under Rule 609.  (R. 133 at 12.)

The Court cannot resolve this motion based on the parties' submissions.  To make an informed judgement, the Court must know the crimes of conviction (Jones thinks he knows what they are, but appears not to be sure), when Williams was convicted and when she committed the crimes, her subsequent history after the convictions, and what she will testify about (in order to know the importance of her testimony and the centrality of the credibility issue).  *See supra* Analysis, Section II.E.  The parties should be prepared to address this issue at the final pretrial conference.

### R.     Motion in Limine #27: Barring Defendants from Referencing Plastic Bags Found at the Carpenter Street Address

Defendants found small plastic baggies at the scene.  (R. 114 at 29.)  Jones seeks to bar reference to them on relevance grounds.  (*Id.*)  Defendants argue that the baggies are relevant because the officers, based on their experience, recognized them as being commonly used for the sale of narcotics, and therefore evidence of the bags will "undercut the likely argument from Jones that the marijuana found was for 'personal use' and belonged to another individual, and that narcotics were not being packaged for sale at [the Carpenter Street address]."  (R. 133 at 12.) Defendants arrested Jones, however, for possession of cannabis, not for selling it or distributing

it.  (R. 55, Answer, at ¶ 25.)  Thus, the existence of the bags is, at best, minimally relevant to the question of probable cause for arrest for cannabis possession.  Their existence—and Defendants explanation for their importance—however, is highly prejudicial, as they paint Jones as a drug dealer rather than merely a drug user.  Without a better explanation from Defendants for the bags' relevance, the Court grants Jones's motion.  If opens the door to such testimony, Defendants can raise the issue with the Court outside the presence of the jury.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the parties' motions in limine.

**DATED: January 31, 2017**                    **ENTERED**

AMY J. ST. EVE
U.S. District Court Judge